UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICAMP SOLUTIONS, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>VISA INC.,<br><br>    Defendant. | Case No. 23-cv-06351-HSG<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS, DENYING PLAINTIFF'S EX PARTE MOTION FOR A TEMPORARY RESTRAINING ORDER, AND DENYING PLAINTIFF'S MOTION TO DEFER OR DENY THE MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 46, 52, 67 |

Pending before the Court are several motions, including:

- Defendant Visa Inc. ("Visa")'s motion to dismiss Plaintiff MiCamp Solutions, LLC ("Plaintiff" or "MiCamp")'s First Amended Class Action Complaint, Dkt. No. 46 ("Mot."), Dkt. No. 47 ("Opp"), Dkt. No. 55 ("Reply")

- MiCamp's motion to deny or defer consideration of Visa's motion to dismiss, Dkt. No. 52

- MiCamp's ex parte motion for a temporary restraining order, Dkt. No. 67 ("Ex Parte Mot."), Dkt. No. 69 ("Ex Parte Opp.)

The Court finds these matters appropriate for disposition without oral argument and the matters are deemed submitted. *See* Civil L.R. 7-1(b). For the reasons discussed below, the Court GRANTS Visa's motion to dismiss, Dkt. No. 46, DENIES MiCamp's motion to deny or defer consideration, Dkt. No. 52, and DENIES MiCamp's ex parte motion for a temporary restraining order, Dkt. No. 67.[1]

//

---

[1] For ease of reference, the Court refers to each document's PDF pagination rather than the document's internal pagination unless otherwise noted.

## I. BACKGROUND

MiCamp is a company "in the business of promoting electronic credit and debit card processing services for merchants." Dkt. No. 24 at 5. In March 2024, MiCamp filed the operative first amended class action complaint. Dkt. No. 24 ("Compl."). Although the complaint is muddled, MiCamp appears to allege that Visa has engaged in widespread anticompetitive conduct, yielding higher prices for consumers, suppressing competition, and harming various stakeholders in the credit card transaction ecosystem. MiCamp further alleges that Visa "intentionally leaked certain PII [personally identifiable information] or negligently handled certain PII." Compl. at 45. MiCamp asserts fives causes of action under federal law on behalf of itself and the proposed nationwide class for alleged violations of Section 2 of the Sherman Act and 42 U.S.C. § 1983.[2] MiCamp also brings three causes of action under state law on behalf of itself and a proposed nationwide class or subclass, alleging that Visa violated dozens of state antitrust and unfair competition laws, was negligent, and breached various contracts. Visa moves to dismiss MiCamp's complaint under Federal Rule of Civil Procedure 12(b)(6). MiCamp, in turn, asks the Court to deny Visa's motion to dismiss or otherwise defer consideration of it to permit MiCamp "adequate opportunity to conduct discovery." Dkt. No. 52 at 1.

In March 2025, MiCamp filed an ex parte motion for a temporary restraining order, Dkt. No. 67, asserting that Visa's "predatory practices" and "anti-competitive behaviors" are "damaging the Putative Class's business reputations, goodwill, and recruitment efforts" and causing "economic pressure, damages to [the proposed class's] business reputation, and lost customers." Ex Parte Mot. at 5. The Court ordered Visa to respond. In opposition, Visa argues that MiCamp cannot establish irreparable harm, cannot show a likelihood of success on the merits, and that public interest and the balance of equities weigh against granting injunctive relief. *See* Ex Parte Opp. at 2. For the reasons set forth below, the Court grants Visa's motion to dismiss, denies MiCamp's motion for denial or delay, and denies MiCamp's motion for a temporary restraining

---

[2] MiCamp defines the relevant class as "all similarly situated United States ISOs [Independent Sales Organizations] that entered into Marketing Agreements between 2004 and the present." Compl. at 54.

1  order.

2  **II.  MOTION TO DISMISS**

3      **A.  Legal Standard**

4  Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

    **B.  Rule 11 Duty**

MiCamp's complaint and opposition briefing contain several inappropriately flippant (or even obviously baseless) statements. *See* Compl. at 16 ("They [Visa executives] also sat together (likely in some sort of dungeon or lair) . . . "); Opp. at 17 ("[They] report alleged infractions to the Visa overlords . . ."). MiCamp's briefing and its motions also contain elementary mistakes. MiCamp's motion for a temporary restraining order, for example, alleges that "Defendants are engaging in the unlawful restraint of trade in interstate commerce in violation of Section 1 of the Sherman Act," yet MiCamp's complaint only asserts claims under Section 2 of the Sherman Act. Ex Parte Mot. at 8. Similarly, MiCamp's seventh and eighth causes of action are purported "state

3

law claims," yet MiCamp does not identify which state's law governs the claims.  Compl. at 68–69.  Taken together, MiCamp's representations to the Court and the quality of its briefing fall well short of the Court's expectations for counsel.  Federal Rule of Civil Procedure 11 "imposes a duty on attorneys to certify by their signature that (1) they have read the pleadings or motions they file and (2) the pleading or motion is 'well-grounded in fact,' has a colorable basis in law, and is not filed for an improper purpose." *Smith v. Ricks*, 31 F.3d 1478, 1488 (9th Cir. 1994).  Attorneys' obligations under Rule 11 are clear, and the Court expects MiCamp's attorneys to satisfy these obligations in all future filings.

### C. Discussion

#### i. Constitutional Challenges (Fifth and Sixth Causes of Action)

MiCamp alleges that Visa's surcharge rules impermissibly restrict speech in violation of the First Amendment and 42 U.S.C. § 1983.  Compl. at 63.  The Court dismisses these claims without leave to amend because section 1983 only applies to state actors, and Visa plainly is not a state actor under these circumstances.  *See Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999).

"The ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights fairly attributable to the [government]?" *Rendell–Baker v. Kohn,* 457 U.S. 830, 838 (1982).  In assessing this question, the Supreme Court instructs that "the party charged with the deprivation [of a federal right] must be a person who may fairly be said to be a state actor.  This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).  "The Court adopted that test because '§ 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrong.'" *Sutton,* 192 F.3d at 835 (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50 (1999)).  The Ninth Circuit employs four tests to determine whether a private party can be properly characterized as a state actor for purposes of section 1983: (1) public function, (2) joint action, (3) governmental compulsion or coercion, and (4) governmental nexus.  *See Sutton,* 192

4

F.3d at 835–36. MiCamp concedes that Visa is a private entity but argues that it functions as a state actor under each of these tests. Opp. at 15–22.

In general, it is "[o]nly in rare circumstances . . . [that] a private party [can] be viewed as a 'state actor' for section 1983 purposes." *Sutton,* 192 F.3d at 835 (quoting *Harvey v. Harvey,* 949 F.2d 1127, 1130 (11th Cir. 1992)). This is not one of those circumstances. MiCamp first argues that Visa "performs a traditional public function" because "Visa has enacted a private set of laws similar to that of State laws" and because Visa allegedly "has its own quasi-administrative court system" that involves private actors who operate like traditional judges and police officers. Opp. at 17–19. The public function test is only satisfied upon showing that the private actor performs a public function that is "traditionally the exclusive prerogative of the state." *Parks School of Bus., Inc. v Symington*, 51 F.3d 1480, 1486 (9th Cir. 1995). Here, MiCamp does not plausibly allege that Visa's quasi-administrative enforcement system functions in a manner that is "traditionally and exclusively governmental." *Kirtley v. Rainey*, 326 F.3d 1088, 1093 (9th Cir. 2003) (internal citation omitted). Specifically, MiCamp does not allege facts indicating that Visa's contractual relationships and associated enforcement mechanisms are uniquely governmental as opposed to, say, typical of private commercial activity.[3] *See In re Late Fee & Over-Limit Fee Litig.*, 528 F. Supp. 2d 953, 960 (N.D. Cal. 2007), *aff'd*, 741 F.3d 1022 (9th Cir. 2014) ("The mere fact that federal banking statutes allow the defendant banks and the plaintiffs to enter into private contracts allowing for such fees does not transform the charging of those fees into state action."). Moreover, MiCamp offers only conclusory assertions regarding Visa's alleged internal "police force" and its "private laws," which provides no basis for determining how closely these specific, challenged components resemble traditional state functions.[4] Since MiCamp has not pleaded facts

---

[3] MiCamp's complaint states that other companies, including Mastercard and American Express, "unilaterally define the business rules" for the broader credit card transaction ecosystem, including "enforce[ing] the[] rules." Compl. at 21. This allegation suggests that other companies routinely undertake comparable enforcement actions such that Visa's alleged activities are not uniquely or exclusively governmental.

[4] Several circuits addressing corporate or private security forces have held that "the mere fact that the performance of private security functions may entail the investigation of a crime does not transform the actions of a private security officer into state action." *Chapman v. Higbee Co.*, 319 F.3d 825, 834 (6th Cir. 2003) (collecting cases).

1  showing that Visa is a state actor under the public function test, the Court dismisses MiCamp's
2  First Amendment claims under this theory of liability.

3  MiCamp next argues that Visa is a state actor under the joint action, governmental
4  coercion, and state nexus tests. Opp. at 19–22.[5] Each of these arguments relies on the premise
5  that Visa's corporate lobbying efforts establish some sort of joint action or nexus between Visa
6  and the state. The Ninth Circuit has squarely rejected that idea, holding that "lobbying [is] an
7  exercise of [an organization's] lawful First Amendment right to petition the government, and that
8  is a countervailing reason against attributing [the organization's] activity to the State." *Single*
9  *Moms, Inc. v. Montana Power Co.*, 331 F.3d 743, 748 (9th Cir. 2003). Since "lobbying activities
10 [are] the typical actions of a private individual or corporation that seeks to tell lawmakers what it
11 wants or needs from government; such lobbying activities, whether an aid or a hindrance to good
12 governance, are not 'state action' implicating individual constitutional rights." *Id.* at 749.
13 Accordingly, MiCamp has not plausibly alleged that Visa is a state actor under any applicable test.
14 To sustain an action under section 1983, a plaintiff must show that the conduct complained
15 of was committed by an entity acting under color of state law. *See Balistreri v. Pacifica Police*
16 *Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). MiCamp has not plausibly alleged that Visa is a state
17 actor, and it is clear that MiCamp will be unable to do so. *See Conley v. Gibson*, 355 U.S. 41, 45
18 (1957). Although "there exists a presumption under Rule 15(a) in favor of granting leave to
19 amend," *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003) (per
20 curiam), "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of
21 sufficient facts alleged under a cognizable legal theory." *Balistreri*, 901 F.2d at 699. Here, since
22 MiCamp's state actor theories fail as a matter of law, the Court dismisses MiCamp's First
23 Amendment claims without leave to amend.

24       **ii.    State Law Antitrust Claims (Fourth Cause of Action)**
25 MiCamp alleges that Visa "entered into agreements in restraint of trade and/or engaged in

---

[5] Although MiCamp discusses the legal elements of the governmental compulsion/coercion test, MiCamp does not mention, let alone explain, how Visa's alleged actions satisfy these elements. *See* Opp. at 20.

1  anticompetitive practices" in violation of dozens of state antitrust laws. Compl. at 60. MiCamp's
2  complaint sets out a bullet point list of these state antitrust laws. *See id.* at 61–62. The Rule 8
3  pleading standard requires more than "a formulaic recitation of the elements of a cause of action."
4  *Twombly*, 550 U.S. at 555. Here, MiCamp has not even provided such a recitation, let alone pled
5  factual content that would allow the Court to plausibly conclude that MiCamp is entitled to relief
6  under the enumerated state statutes. "Merely listing the name and code section of other states' . . .
7  statutes does not suffice to state a claim." *Fukaya v. Daiso California LLC*, No. 23-CV-00099-
8  JSC, 2023 WL 3436092, at *3 (N.D. Cal. May 11, 2023) (internal citation omitted). Since the
9  complaint does not plausibly allege that Visa violated the 49 statutes cited, the Court dismisses
10 MiCamp's state antitrust claims with leave to amend. In any amended pleading, MiCamp must
11 plead facts in support of each element of the state statutes that Visa allegedly violated.[6]

### iii. Negligence & Breach of Contract Claims (Seventh and Eighth Causes of Action)

MiCamp asserts two "state law claims," alleging that Visa (1) was negligent and (2) breached "registration agreement" contracts as well as the covenant of good faith and fair dealing. Compl. at 67–72. These claims stem from Visa's purported mishandling of PII and other sensitive information, which allegedly exposed subclass members' PII and led to "credit fraud, bank fraud, and other varieties of identity fraud." *Id.* at 69. These claims suffer from several deficiencies. First, MiCamp simply states that these are "state law claims" but does not identify any statutory basis for these claims. As a result, Visa lacks "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley,* 355 U.S. at 47. Visa raised this shortcoming in its motion to dismiss, but MiCamp declined to address it in its opposition brief. *See True Gentlemen's Jerky, Inc. v. 1K1V TGJ Holdings, LLC*, No. 21-CV-04073 SBA, 2022 WL 3370792, at *8 (N.D. Cal. Aug. 16, 2022) ("[Plaintiff] does not respond to Defendants' argument, thereby conceding the merits of the motion to dismiss this claim."); *Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210 n.7 (N.D. Cal. 2013) (finding that plaintiff conceded issues when he failed to respond to

---

[6] The Court will not exercise supplemental jurisdiction over MiCamp's state antitrust claims in the absence of a viable federal claim.

7

them in his opposition brief). Second, MiCamp asserts that Visa breached "registration agreement" contracts, but MiCamp does not specify the terms of these contracts, what specific contractual provisions Visa violated, or the specific aspects of Visa's conduct that breached the contracts. MiCamp's failure to substantiate its breach of contract claim with factual allegations is fatal. Since MiCamp has not met the Rule 8 pleading requirements, the Court dismisses MiCamp's negligence and breach of contract claims with leave to amend. Any amended pleading must (1) identify the statutory basis for MiCamp's "state law claims," and (2) plead sufficient factual allegations to raise a plausible inference that Visa committed the alleged misconduct.[7]

### iv. Sherman Act Claims (First, Second, and Third Causes of Action)

MiCamp alleges that Visa committed various "anticompetitive acts" and unlawfully acquired monopoly power in violation of section 2 of the Sherman Act. Compl. at 57. MiCamp specifically alleges that Visa unlawfully attempted, conspired, and succeeded in acquiring monopoly power in "the market for General Purpose Debit Card Network Services." *Id.* at 57–60. While section 1 of the Sherman Act targets concerted anticompetitive conduct, section 2 targets independent anticompetitive conduct. *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 989–90 (9th Cir. 2020). The statute makes it illegal to "monopolize . . . any part of the trade or commerce among the several States." 15 U.S.C. § 2. Each of MiCamp's section 2 claims have different elements. To establish liability under section 2 for unlawful monopolization, a plaintiff must show: (1) the possession of monopoly power in the relevant market; (2) the willful acquisition or maintenance of that power; and (3) causal antitrust injury. *Id.* at 990. An attempted monopolization claim under section two has three elements: "(1) specific intent to control price or eliminate competition; (2) anticompetitive conduct directed at accomplishing the unlawful objective; (3) and a dangerous probability of success." *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1378 (9th Cir. 1989). And finally, "[t]o establish a conspiracy to monopolize

---

[7] MiCamp refers to the relevant contract both as a "registration agreement" and as a "sponsorship agreement." *See* Compl. at 70; Opp. at 23. MiCamp's complaint also identifies several other agreements and contracts. Any amended pleading should clearly and consistently identify the specific contract or contracts that Visa allegedly breached.

8

1 claim under Section 2, plaintiffs must plead: (1) the existence of a combination or conspiracy to
2 monopolize; (2) an overt act in furtherance of the conspiracy; (3) the specific intent to
3 monopolize; and (4) causal antitrust injury." *In re Nat'l Football League's Sunday Ticket Antitrust*
4 *Litig.*, 933 F.3d 1136, 1159 (9th Cir. 2019) (internal citation and quotations omitted).  Visa moves
5 to dismiss on the grounds that MiCamp fails to plead both antitrust standing and the elements of
6 its unlawful monopolizations, attempted monopolization, and conspiracy to monopolize claims.
7 Because the Court finds that MiCamp's failure to plead antitrust standing is dispositive, the Court
8 does not reach Visa's alternative arguments.

### a. Antitrust Standing

Based on the pleadings currently before the Court, Visa argues that MiCamp lacks standing to assert claims under section 2 of the Sherman Act.  Mot. at 25–31.  The Court agrees.

"Antitrust standing is distinct from Article III standing.  A plaintiff who satisfies the constitutional requirement of injury in fact is not necessarily a proper party to bring a private antitrust action." *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of California*, 190 F.3d 1051, 1054 n.3 (9th Cir. 1999) (citation omitted).  To establish antitrust standing, "the plaintiff must plausibly allege (1) 'the defendant's specific unlawful conduct,' (2) 'some credible injury caused by the unlawful conduct,' (3) that this injury flowed 'from that which makes defendants' acts unlawful,' and (4) that the injury is 'of the type the antitrust laws were intended to prevent.'" *In re German Auto. Manufacturers Antitrust Litig.*, 497 F. Supp. 3d 745, 760 (N.D. Cal. 2020), *aff'd,* No. 20-17139, 2021 WL 4958987 (9th Cir. Oct. 26, 2021) (quoting *Am. Ad Mgmt., Inc.*, 190 F.3d at 1055–57). The Court gives "great weight to the nature of the plaintiff's alleged injury." *Am. Ad Mgmt., Inc.*, 190 F.3d at 1055.  In order to "conclude that there is antitrust standing, . . . a showing of antitrust injury is necessary, [although] not always sufficient." *Id.* (cleaned up and quotations omitted). There are four requirements for antitrust injury: (1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent.  *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013). "With respect to the second element, a plaintiff must allege some credible injury caused by the unlawful conduct." *Id.* (cleaned up and citation omitted).  The harm must be to competition:

9

"removal of one or a few competitors need not equate with injury to competition." *Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 508 (9th Cir. 1989). "Only when the restraining force of an agreement or other arrangement affecting trade becomes unreasonably disruptive of market functions such as price setting, resource allocation, market entry, or output designation is a violation of the Sherman Act threatened." *Id.*

At issue here is whether MiCamp pleads sufficient facts to state a plausible antitrust injury. MiCamp's complaint identifies several injuries stemming from Visa's alleged misconduct. Specifically, MiCamp asserts that it and other "Independent Sales Organizations" suffered injuries to their business and property by (1) paying "dual pricing and surcharge" fines and penalties and "artificially-inflated, supra-competitive interchange fees," (2) being unable to offer competitive and lucrative pricing models, (3) incurring surcharge penalties for offering their merchants cash discount processing, and (4) incurring chargebacks and unnecessary hardware implementation costs. Compl. at 58–60. Visa argues that MiCamp fails to allege "an injury to MiCamp that is traceable to conduct by Visa." Mot. at 28. Put simply, Visa contends that MiCamp cannot establish a sufficient connection between Visa and MiCamp's alleged injuries. Instead, Visa asserts that the relationships and contractual agreements between MiCamp and (1) merchants, (2) payment processing companies, and (3) the merchants' banks are the sources of MiCamp's alleged injuries. Mot. at 10–11.

According to MiCamp, it serves "as a middleman between the Members [banks that issue credit/debit cards and banks that enable merchants to accept debit/credit card payments], the Payment Processors [companies that provide electronic payment processing services], and merchants." Compl. at 22. As middlemen, MiCamp and other comparable companies "provide various services to merchants" and assume "almost all of the risk of loss" that payment processing companies can incur, including penalties from Visa. *Id.* at 21. In exchange, MiCamp and its peers receive compensation from merchants and "residual income" each month from payment processing companies. *Id.* at 21–22. In *Illinois Brick v. Illinois,* the Supreme Court established that "indirect purchasers" may not recover antitrust damages, holding that "only a direct purchaser of the [product] . . . is a party 'injured in his business or property' entitled to sue under Section 1

of the Sherman Act, not another party in the chain of manufacture or distribution." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1049 (9th Cir. 2008) (citing *Illinois Brick v. Illinois*, 431 U.S. 720, 736 (1977)).[8]  *See Apple Inc. v. Pepper*, 587 U.S. 273, 280 (2019) ("[I]f manufacturer A sells to retailer B, and retailer B sells to consumer C, then C may not sue A.  But B may sue A if A is an antitrust violator. And C may sue B if B is an antitrust violator.  That is the straightforward rule of *Illinois Brick*.").  The Ninth Circuit applied *Illinois Brick* in the context of an antitrust suit between credit card companies and banks—also at the motion to dismiss stage—and held that where plaintiffs "are the middlemen" and lack a "contractual relationship with [Visa and Mastercard] directly" plaintiffs run "squarely into the *Illinois Brick* wall" and are unable to establish injury.  *Kendall*, 518 F.3d at 1048–50.  "In sum, a bright line rule emerged from *Illinois Brick:* only direct purchasers have standing . . . to seek damages for antitrust violations." *Delaware Valley Surgical Supply Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1120–21 (9th Cir. 2008).

Here, as best the Court can decipher from MiCamp's convoluted pleadings, MiCamp, "[l]ike the State of Illinois in *Illinois Brick*, . . . [has] the status of indirect purchaser[]." *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 207 (1990).  Since "[i]n the distribution chain, [MiCamp is] not the immediate buyer[] from the alleged antitrust violators, . . . any antitrust claim against the defendants is not for [it], but for the [merchants, banks, or payment processors] to assert." *Id*. MiCamp describes itself as a "middleman" and concedes that certain challenged fees, including interchange fees, are paid to and deducted from merchants by banks.  *See* Compl. at 11.  It is unclear how Visa's alleged conduct has directly "caus[ed] an injury to the plaintiff," at least as to MiCamp's injuries from fines and fees.  *Somers*, 729 F.3d at 963.  *See In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 750 (9th Cir. 2012) (finding that plaintiffs were indirect purchasers where "the Bank Defendants pass on the cost of the interchange fees through the foreign ATM fees" such

---

[8] The Ninth Circuit applies the indirect purchaser rule to section 2 of the Sherman Act.  *See Somers*, 729 F.3d at 961–62; *Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1064 (9th Cir. 2021); *Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1233 (9th Cir. 1998) ("The Supreme Court has applied the indirect purchaser rule in [Clayton Act] § 4 cases involving section 1 of the Sherman Act . . . and section 2 of the Sherman Act.").  *See also In re Qualcomm Antitrust Litig.*, 292 F. Supp. 3d 948, 982 (N.D. Cal. 2017).

1  that plaintiffs do not "directly pay the fixed interchange fee"). MiCamp states in its opposition

2  brief that it "has been paying portions of Visa's Interchange Fees," Opp. at 27, but this assertion

3  contains no factual support and appears to contradict MiCamp's complaint, which says that

4  "'Interchange Fees' are fees or rates set by Visa . . . that are paid to . . . Banks by merchants."

5  Compl. at 11.[9]

6      MiCamp argues that its position resembles that of plaintiffs in *Apple Inc. v. Pepper*, 587

7  U.S. 273, 276 (2019). Opp. at 24. But in *Apple*, "plaintiffs purchased apps directly from Apple

8  and therefore [were] direct purchasers," such that "[t]here [wa]s no intermediary in the distribution

9  chain between Apple [the alleged antitrust violator] and the consumer." *Apple Inc.*, 587 U.S. at

10 276, 281. By contrast, MiCamp does not allege any direct relationship with Visa and instead

11 seemingly enters into contractual agreements with banks and payment processors. In *Apple*, "[t]he

12 absence of an intermediary [wa]s dispositive." *Apple Inc.*, 587 U.S. at 281. Here, the presence of

13 multiple intermediaries is equally dispositive. Moreover, MiCamp's conclusory allegations that it

14 incurred unnecessary costs and was unable to offer competitive pricing models are devoid of

15 factual support. To adequately allege antitrust injury at the pleading stage, Plaintiff must set forth

16 sufficient factual allegations for the Court to conclude that Visa's unlawful conduct plausibly

17 caused an injury to the plaintiff of the sort the antitrust laws are intended to prevent. *See Somers*,

18 729 F.3d at 963. MiCamp has not done so here. Accordingly, the Court finds that MiCamp fails

19 to plausibly allege a cognizable antitrust injury for standing purposes.

### b. Leave to Amend

21     At this stage in the litigation, the Court cannot say that amendment would be futile as to

22 MiCamp's Sherman Act claims. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en

---

[9] This is not the only contradiction apparent in the pleadings. MiCamp's original complaint alleged that merchants are "the direct purchaser[s] of General Purpose Payment Card Network Services and directly pay[] the Interchange Fees associated with . . . transaction[s]." Dkt. No. 1 at 25. Visa noted this *Illinois Brick* issue in its original motion to dismiss. *See* Dkt. No. 15. MiCamp's operative complaint, however, now alleges that merchant are "the indirect purchaser[s] of General Purpose Payment Card Network Services and ISOs like MiCamp pay[] the Interchange Fees associated with . . . transaction[s]." Compl. at 27. Moreover, "[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 (9th Cir. 1998).

banc) ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless the pleading could not possibly be cured by the allegation of other facts.") (quotation omitted).[10]  Accordingly, the Court dismisses MiCamp's Sherman Act claims with leave to amend.

### III. MOTION TO DEFER OR DENY CONSIDERATION

MiCamp asks the Court to defer or deny ruling on Visa's motion to dismiss, arguing that it should be treated as a motion for summary judgment, thereby entitling MiCamp to conduct discovery. *See* Dkt. No. 52.  The Court has not converted Visa's motion to dismiss into a motion for summary judgment.  And since "respondent's complaint is deficient under Rule 8, [it] is not entitled to discovery, cabined or otherwise." *Iqbal*, 556 U.S. at 686.  Accordingly, the Court denies MiCamp's motion to defer or deny consideration.

### IV. MOTION FOR A TEMPORARY RESTRAINING ORDER

MiCamp asks the Court for immediate injunctive relief in the form of a temporary restraining order and, subsequently, a preliminary injunction. Dkt. No. 67.

#### A. Legal Standard

Under Federal Rule of Civil Procedure 65, a temporary restraining order may enjoin conduct pending a hearing on a preliminary injunction. *See* Fed. R. Civ. P. 65(b).  The standard for issuing a temporary restraining order and issuing a preliminary injunction are substantially identical. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839, n.7 (9th Cir. 2001).  A plaintiff seeking preliminary relief must establish: (1) that it is likely to succeed on the merits; (2) that it is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008).  Preliminary relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22.  A court must find that "a certain threshold showing" is made on each of the four required elements. *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011).  Under the Ninth

---

[10] As noted above, any amended pleading must comply with Rule 11.

Circuit's sliding scale approach, a preliminary injunction may issue if there are "serious questions going to the merits" if "a hardship balance [also] tips sharply towards the [movant]," and "so long as the [movant] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

### B. Discussion

Since the Court dismissed MiCamp's complaint under Rule 12(b)(6) for failure to state a claim, the Court denies MiCamp's motion for a temporary restraining order. MiCamp cannot demonstrate a likelihood of success on the merits in the absence of a viable complaint. At this stage, that deficiency is fatal to MiCamp's request for injunctive relief. *See Van Skike v. City of Santa Rosa*, No. 22-CV-03222-JSC, 2022 WL 1987862, at *2 (N.D. Cal. June 6, 2022).

## V. CONCLUSION

The Court GRANTS Visa's motion to dismiss, Dkt. No. 46. The Court permits leave to amend as to MiCamp's Sherman Act and state law claims. MiCamp's First Amendment claims are dismissed without leave to amend. MiCamp may file an amended complaint within 21 days of the date of this order. The Court DENIES MiCamp's motion to defer or deny consideration of Visa's motion to dismiss, Dkt. No. 52. The Court further DENIES MiCamp's ex parte motion for a temporary restraining order, Dkt. No. 67.

**IT IS SO ORDERED.**

Dated: 3/24/2025

HAYWOOD S. GILLIAM, JR.
United States District Judge